Mack L. BROCK, Plaintiff-Appellee,

v.

CORAL DRILLING, INC., et al., Defend-
ants-Third-Party Defendants-Inter-
venors-Cross Appellees.

BAROID DIVISION OF NATIONAL
LEAD COMPANY, Defendant-Third-
Party Plaintiff-Appellant-Cross Appel-
lee,

v.

SHELL OIL COMPANY, Third-Party De-
fendant-Appellee-Cross Appellant.

No. 72–1892.

United States Court of Appeals,
Fifth Circuit.

April 20, 1973.

Rehearing Denied June 15, 1973.

Francis Emmet, New Orleans, La., for Baroid Div. of National Lead Co.

John C. Theus, Thomas W. Leigh, Monroe, La., for Mack L. Brock.

William G. Kelly, Jr., Monroe, La., Gordon F. Wilson, Jr., New Orleans, La., for Coral Drilling Inc.

Thomas M. Hayes, Jr., Monroe, La., Frank C. Allen, Jr., New Orleans, La., for Shell Oil Co.

Before WISDOM, BELL and COLEMAN, Circuit Judges.

WISDOM, Circuit Judge:

■ Once again, we go down to the sea in drilling rigs. This case presents another question concerning the scope of the implied warranty of workmanlike service when measured in light of the indemnity principles of Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L. Ed. 133.[1] Mack L. Brock, a roustabout *Sieracki* seaman working on a stationary drilling rig in the Gulf of Mexico, was injured while unloading deck cargo from a supply boat, the M/V Baroid Rocket. Brock sued the shipowner, who in turn sought indemnity from Brock's employer, a drilling company. The district court permitted Brock to recover against the shipowner but denied the shipowner's action for recovery over. We affirm in part and reverse in part.

I.

At the time of the accident, Mack L. Brock was employed as a roustabout by Coral Drilling Company to perform general labor in the drilling of an oil well on the continental shelf off the Louisiana coast in the Gulf of Mexico. Shell Oil Company had contracted with Coral to drill the well and had agreed to furnish certain supplies, including drilling mud, necessary to the operation. Under the contract, Shell purchased drilling mud from the Baroid Division of National Lead Company to be delivered by Baroid f. o. b. the rig. Coral agreed to furnish all personnel necessary to the operation of the rig, including roustabouts to unload bagged drilling mud from supply boats. Coral was given complete control and supervision over the discharge of supplies.

On November 15, 1968, Baroid's supply boat, the M/V Baroid Rocket, was loaded at the Mayronne Dock in Venice,

1. In the Longshoremen's and Harbor Workers' Act Amendments of 1972, 86 Stat. 1265, 33 U.S.C. § 901 et seq., Congress recently effected major reforms in the liability of shipowners, as third parties, to pay damages to longshoremen and others injured while engaged in stevedoring operations. The Amendments provide that the liability of shipowners to *Sieracki* seamen, that is longshoremen and others who perform work on a vessel that is traditionally performed by seamen, must be predicated on negligence rather than on the no-fault concept of seaworthiness. The purpose of this change in existing law is to place the shipowner, in so far as third party liability is concerned, in the same position as land-based third parties in non-maritime pursuits. Thus, the shipowner will no longer be strictly liable to *Sieracki* seamen for injuries resulting from breach of its duty to furnish a seaworthy vessel. This approach prevents a shipowner from being liable for injuries which are really the fault of the stevedore.

The effect of the Amendments is to eliminate the *Ryan* doctrine, under which the shipowner could recover against the stevedore for breach of its warranty of workmanlike service. Since the shipowner cannot be sued by a *Sieracki* seaman on the strict liability theory of unseaworthiness, *Ryan* indemnity from the stevedore is unnecessary. Furthermore, the Amendments state that contractual agreements requiring the stevedore to indemnify the shipowner for such damages are void as against public policy. *See* H.R.Rep.No.92–1441, 92nd Cong., 2d Sess. (1972), U.S.Code Cong. & Admin.News 1972, p. 4698.

Louisiana. Captain Hoyt Bergeron, in charge of the vessel, was responsible for instructing the dock hands how to locate and secure the deck cargo, some 500 bags of drilling mud or gel, to stabilize the vessel. The deck cargo was on wooden pallets, with between 35 to 50 sacks per pallet, and was placed as far forward as possible behind the wheelhouse. Although such cargo is sometimes covered with tarpaulins or lashed to the deck to prevent shifting in heavy weather, the captain determined that this was not necessary.

The vessel got under way at 6 p. m. and reached the rig about midnight, tying up port side to, with stern to the wind. During the trip, the weather was rough and the deck cargo shifted considerably. A few of the stacks were leaning, others had fallen to the deck, and some of the fallen sacks were broken. At about 1 a. m., Emery Sonnier, the Coral crew operator and roustabout pusher, assembled Brock and the other members of the roustabout gang to unload the deck cargo. Sonnier directed Brock and another roustabout to descend to the deck of the supply boat to unload the sacked mud. The weather was rough at this time. The seas were running from 6 to 12 feet high and the wind was blowing at 20 to 30 knots. Brock suggested to Sonnier that the weather was too rough to unload. The condition of the deck cargo was visible from the platform, and Sonnier could see that waves were washing over the stern, through the bulwark. Sonnier told Brock, however, that if the boat could tie up, he would unload it.

Brock descended to the deck of the vessel to reload the sacks on pallets so that they could be lifted to the platform. Since most of the spilled sacks were to-ward the stern, Brock placed the pallets there and began restacking. Waves continued to wash over the deck, through the bulwark. While Brock was picking up a sack of drilling mud and placing it on one of the pallets, a heavy wave came over the stern, lifted the pallet, and drove it toward Brock, pushing him back. Still holding the sack, Brock was backed into another pallet of stacked mud, striking his back and part of his leg. After this, Brock continued to work until the unloading operation was completed.

On January 14, 1970, Brock initiated suit against Baroid and Shell.[2] Coral later intervened to claim reimbursement from Baroid for compensation paid to Brock under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. Baroid then cross-claimed against Coral and Shell for *Ryan* indemnity. *Shell*, in turn, cross-claimed against Coral for indemnity under its contract and against Baroid for breach of its obligation to deliver the goods safely to the rig. On February 4, 1972, the district court rendered its decision. The court found that the proximate cause of Brock's injury was the unseaworthy condition of the deck of the M/V Baroid Rocket. The unseaworthy condition was caused by Baroid's improper loading of the cargo at Venice the day before the accident, coupled with the failure to secure the cargo in any way, and was compounded by the captain's negligence in mooring the vessel port side to, with stern to seas running 6 to 12 feet, and with knowledge that the roustabouts would have to restack the cargo in those conditions. The court denied Baroid's claim for indemnity against Coral and Shell, finding that Coral had not breached its warranty of workmanlike service. Baroid appealed.[3]

---

2. Brock also named Coral Drilling Company and Cheramie Boat Company as defendants. Baroid had contracted with Cheramie for a captain and crew to operate the M/V Baroid Rocket. Baroid later assumed the defense of Cheramie and agreed to indemnify it for any loss.

Brock's claim against Coral was dismissed.

3. Shell cross-appealed against Coral to protect its claim for indemnity should Coral later be held liable for breach of its warranty of workmanlike service.

## II.

■■ At the outset we meet the contention that Brock should have been denied recovery against the shipowner because of Brock's contributory negligence. The district court found that Brock's conduct was reasonable in the circumstances. It is clear that Brock was aware of the hazards caused by the condition of the deck and the position of the vessel. He protested that the weather was too rough, but nevertheless proceeded to unload the cargo after the Coral pusher directed him to do so. Baroid suggests that Brock should have refused. We cannot say, however, that the district court clearly erred in finding that Brock's conduct met the standard of ordinary prudence. F.R.Civ.P. 52(a). Brock relied upon the judgment of the Coral pusher who had experience in such operations. Moreover, Brock's decision must be evaluated in light of his economic dependence on Coral for future employment and the general principle that liability for failure to comply with safety regulations should be imposed on the party exposing the injured employee to the dangerous condition. Burrage v. Flota Mercante Grancolombiana, 5 Cir. 1970, 431 F.2d 1229. We therefore conclude that Brock was not contributorily negligent.

## III.

■ Baroid next contends that it is entitled to indemnity from Coral for breach of its warranty of workmanlike service. A shipowner, of course, has an absolute duty to furnish a vessel and gear reasonably fit for the purposes for which they were intended and is strictly liable for injury resulting from the unseaworthy condition of either. This liability is nondelegable and extends to longshoremen, stevedore employees, and others aboard the vessel. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S. Ct. 872, 90 L.Ed. 1099, Mitchell v. Trawler Racer, 1960, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941.

■ In some circumstances, however, a shipowner may be entitled to indemnity from a stevedore company for breach of its warranty of workmanlike service. In the litigation-generating *Ryan* case the Supreme Court held that a stevedoring company that enters into a service agreement with a shipowner is liable to indemnify the owner for damages sustained as a result of its improper stowage of cargo. The Court reasoned that the essence of the stevedore's contract was the obligation to perform its work "properly and safely." "Competency and safety . . . are inescapable elements of the service undertaken." The Court emphasized that this implied "warranty of workmanlike service" finds its origin in contract, rather than tort, and is "comparable to a manufacturer's warranty of the soundness of its manufactured product." 350 U.S. at 133, 134, 76 S.Ct. at 237.[4]

4. The present case differs from the situation in *Ryan* in that the party seeking indemnity, Baroid, is not in privity of contract with the party against whom indemnity is sought, Coral. Decisions since *Ryan* have recognized, however, that privity of contract is not required in order to qualify as a beneficiary of a stevedore's warranty of workmanlike service. "[T]he obligations which arise from the implied warranty are not limited to the confines of the usual action on contract; the zone of responsibility may extend to parties who are not in direct contractual relationship." Whisenant v. Brewster-Bartle Offshore Company, 5 Cir. 1971, 446 F.2d 394, 401. *See* Waterman Steamship Corp. v. Dugan & McNamara, Inc., 1960, 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 and Crumady v. Joachim Hendrik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed. 2d 413. In *Whisenant*, a barge owner sought indemnity from a drill pipe testing company whose breach of its duty of workmanlike service had made the barge unseaworthy. We permitted recovery despite the fact that the testing company's service agreement was not made with the barge owner. In effect, the barge and its owner were viewed as third party beneficiaries of the testing company's implied warranty of workmanlike service. So it is with the case at bar. Coral was under contract with Shell to control and supervise the unloading of cargo from supply boats. Baroid, as the shipowner,

In Italia Societa per Azioni Di Navigazione v. Oregon Stevedoring Co., 1964, 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732, the Supreme Court, in holding that a stevedore breached its warranty of workmanlike service by supplying latently defective equipment, noted that the *Ryan* doctrine is premised on the idea that "liability should fall upon the party best situated to adopt preventive measures and thereby to reduce the likelihood of injury. Where, as here, the injury-producing and defective equipment is under the supervision and control of the stevedore, the shipowner is powerless to minimize the risk; the stevedore is not." 376 U.S. at 324, 84 S.Ct. at 754.

■■ Coral contends, however, that the dangerous condition of the vessel's deck was caused by Baroid's improper loading of the cargo and positioning of the vessel when it was moored to the drilling rig. Coral would conclude that indemnity is precluded by Baroid's breach of its duty of seaworthiness. We disagree. Although a stevedore is not obligated to make an intensive inspection of the vessel, once aware of a dangerous condition, the stevedore may not ignore it. D/S Ove Skou v. Hebert, 5 Cir. 1966, 365 F.2d 341; T. Smith & Son, Inc. v. Skibs A/S Hassel, 5 Cir. 1966, 362 F.2d 745. The shipowner's breach of the duty of seaworthiness does not provide a license for the stevedore to ignore the consequences of its own actions since the stevedore's duty is to perform its services properly and safely in the face of known defects. Burrage v. Flota Mercante Grancolombiana, *supra*. Olin Mathieson Chemical Corp. v. United Stevedoring Division States Marine Lines, Inc., 5 Cir. 1970, 432 F.2d 1234, affirming 317 F.Supp. 1373. In T. Smith & Son, Inc. v. Skibs A/S Hassel, *supra*, for example, we noted that "defects which are in fact observed cannot be overlooked. If the stevedore has knowledge of a defect it should correct

it or require it to be corrected by the ship's officers." 362 F.2d 747. Again, in Burrage v. Flota Mercante Grancolombiana, *supra*, we permitted the shipowner to recover against the stevedore despite the fact that the shipowner had breached its duty to furnish a seaworthy vessel. We stated: "The notion of workmanlike performance certainly encompasses an obligation by the contractor to take notice of those deficiencies and hazards likely to give rise to damage to life, limb, or property and then take requisite action depending on the nature of the relationship of the parties and their contractual obligations, express or implied, either to eliminate or minimize the hazard or to stop work until the situation is corrected." 431 F.2d at 1232.

■ It is clear, therefore, that the warranty of workmanlike service demands that a stevedore must not continue to work its crew in the face of an unsafe or unseaworthy condition. Rather, it must remedy the situation itself, have the shipowner remedy it, or stop the operation.

In the present case, we think that Coral breached its warranty of workmanlike service. The record indicates that Coral's pusher was aware of the condition of the vessel's deck. He knew that the sacks would have to be restacked and that waves running 6 to 12 feet high were washing over the stern of the vessel. There was no immediate need to unload the cargo. Nevertheless, instead of remedying the situation or requesting the vessel's captain to remedy it, he decided to proceed with the unloading. In so doing, he brought into play the unseaworthy condition and breached Coral's warranty of workmanlike service.

The district court suggested that Coral should not be held to the same standard of workmanlike service as a stevedore because Coral's employees were roustabouts and did not possess special

was the third party beneficiary of Coral's implied warranty of workmanlike service.

Waterman Steamship Corp. v. Dungan & McNamara, Inc.

expertise in unloading cargo. Thus, the court stated that Coral could rely on the vessel's captain to inform the roustabouts if it was unsafe to unload the deck cargo. Since the captain was silent, the court concluded that Coral acted reasonably in unloading the deck cargo.

We cannot agree with this conclusion. Under the terms of the contract, Coral had complete control and supervision over the unloading of supply boats. It was Coral's obligation to furnish the crew and supervisory personnel necessary to do the work safely. If the conditions were unsafe for unloading the vessel, Coral was responsible for suspending the operation. Furthermore, both Brock and Coral's pusher testified that they had experience in unloading supply boats and knew exactly what to do. In these circumstances, holding Coral responsible for the injury resulting from its decision to unload the vessel is consistent with the principle that liability should fall on "the party best situated to adopt preventive measures and thereby to reduce the likelihood of injury." Italia Societa per Azione di Navigazione v. Oregon Stevedoring Co., 376 U.S. at 324, 84 S.Ct. at 754.

The district court also found that Baroid should be denied recovery under Waterman Steamship Corp. v. Dugan & McNamara Inc., 1960, 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 523. In Weyerhaeuser S. S. Co. v. Nacirema Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491, the Supreme Court stated, in dicta, that if the stevedoring company "rendered a substandard performance which led to foreseeable liability of petitioner [the shipowner], the latter was entitled to indemnity *absent conduct on its part sufficient to preclude recovery.*" 355 U.S. at 567, 78 S.Ct. at 441 (emphasis added). We have held that "conduct sufficient to preclude recovery" means only conduct on the part of the shipowner which prevents the stevedore's workmanlike performance. Waterman Steamship Corp. v. David, 5 Cir. 1965, 353 F.2d 660, 665. Southern Stevedoring & Contracting Co. v. Hellenic Lines, Ltd., 5 Cir. 1968, 388 F.2d 267.

The district court did not specify what conduct on Baroid's part prevented Coral's workmanlike performance. We are likewise unable to find any such conduct. We conclude, therefore, that *Weyerhaeuser* does not preclude Baroid's recovery.

Baroid also renews its claim for indemnity from Shell. The district court failed to find any negligence on Shell's part. On the record before us, we cannot say that the district court clearly erred, and we affirm its decision.

Finally, in view of our holding that Coral breached its warranty of workmanlike service, we note that Shell is entitled to indemnity from Coral for any costs or attorneys' fees incurred by Shell in defending the claims brought against it by Baroid. Dow Chemical Co. v. Barge UM–23B, 5 Cir. 1970, 424 F.2d 307; Lusich v. Bloomfield Steamship Co., 5 Cir. 1966, 355 F.2d 770.

The judgment of the district court must be affirmed in part and reversed in part. The cause is remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.