UNITED STATES of America, Third-Party Plaintiff-Appellant,

v.

SAN FRANCISCO ELEVATOR COMPANY, Third-Party Defendant-Appellee.

No. 72–2524.

United States Court of Appeals, Ninth Circuit.

Feb. 28, 1975.

William E. Gwatkin (argued), U. S. Dept. of Justice, San Francisco, Cal., for appellant.

Ernest M. Thayer, San Francisco, Cal., (argued), for appellee.

OPINION

Before VAN OOSTERHOUT,* BROWNING and SNEED, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by third-party plaintiff United States of America from that part of the judgment of the district court limiting its recovery from third-party defendant San Francisco Elevator Company for indemnity to $300,000, although provable damages were established at $370,000 plus attorneys' fees. We reverse and hold that the United States is entitled to indemnity from San Francisco Elevator in the full amount the United States was required to pay in a maritime wrongful death action by a San Francisco Elevator employee.

---

* Honorable Martin D. Van Oosterhout, Senior Circuit Judge, Eighth Circuit, sitting by designation.

In 1966 the United States and Todd Shipyard Corporation (Todd) entered into a master ship repair contract for repair of a navy refrigerator ship, the USS ALUDRA, which was moored at the United States Naval Air Station in Alameda, California. One of the repairs provided for in the contract was the repair of a vertical cargo elevator in the ship. This job was subcontracted to third-party defendant San Francisco Elevator. The master or prime contract between the United States and Todd contained an indemnity and hold harmless clause which provided:

> "(c) The contractor indemnifies and holds harmless the Government, its agencies and instrumentalities, the vessel and its owners, against all suits, actions, claims, costs or demands (including, without limitation, suits, actions, claims, costs or demands resulting from death, personal injury and property damage) to which the Government, its agencies and instrumentalities, the vessel or its owner may be subject or put by reason of damage or injury (including death) to the property or person of any one other than the Government, its agencies, instrumentalities and personnel, the vessel or its owner, arising or resulting in whole or in part from the fault, negligence, wrongful act or wrongful omission of the Contractor, or any subcontractor, his or their servants, agents, or employees; provided, that the Contractor's obligation to indemnity under this paragraph (c) shall not exceed the sum of $300,000 on account of any one accident or occurrence in respect of any one vessel."

The subcontract between Todd and San Francisco Elevator also contained an indemnity clause which provided:

> "GOVERNMENT CONTRACTS—If this purchase order is issued under a government contract, whether or not such government contract is specifically referred to in this purchase order, the seller agrees to indemnify and hold harmless the buyer from any liability, claims of liability and expense under said government contract arising out of seller's failure to perform in accordance with this purchase order and seller agrees that such liability and the amount thereof may be negotiated by buyer in accordance with the terms of said government contract or determined in accordance therewith, and seller agrees to be bound thereby.
>
> LIABILITY AND INSURANCE— the seller agrees to save the buyer harmless from all claims for personal injuries, including death, and all damage to property arising out of any cause whatsoever and resulting directly or indirectly from the seller's performance hereunder. Workmen engaged in the performance hereof shall at all times be considered employees of the seller."

The United States was not made a party to the subcontract.

On April 25, 1960, Steven R. Bigham, an employee of San Francisco Elevator, was killed while working as an elevator mechanic on the vertical cargo elevator on the ship. The decedent's heirs filed suit in admiralty against the United States and Todd alleging that the decedent's death was caused by the negligence of both Todd and the United States and by the unseaworthiness of the USS ALUDRA. The United States cross-claimed against Todd claiming indemnity rights pursuant to the prime contract clause. The United States also brought a separate third-party complaint directly against San Francisco Elevator asserting its right to indemnity pursuant to San Francisco Elevator's breach of its implied warranty to perform workmanlike service.[1]

---

1. The third-party complaint was brought as an admiralty and maritime claim pursuant to Rule 14(c), F.R.Civ.P. With respect to the nature of the claim, the complaint provided in pertinent part:

> 12. If deceased sustained injuries as alleged . . . such injuries were solely and proximately caused by the faulty and negligent performance of [San Francisco] Elevator Co. in breach of its contractual warranties, express or implied, of a safe place to work and [provide] workmanlike services.

The consolidated cases were tried in admiralty to the court. The court found that Bigham's death was caused by the unseaworthiness of the ALUDRA and the negligence of both the United States and San Francisco Elevator. Damages were assessed against the United States at $370,000. The propriety of the court's findings as to negligence are not before us.[2] On the basis of the limited indemnity provision in the prime contract, recovery against Todd in favor of the United States was limited to $300,000. San Francisco Elevator was ordered to indemnify Todd in accordance with the provisions of the subcontract. The court further found that the negligence of the United States did not prevent San Francisco Elevator from performing its contractual duties in a workmanlike manner and that there was a warranty of workmanlike service running from San Francisco Elevator to the United States which it breached by performing its repair work negligently.[3] Accordingly, the court initially awarded indemnity to the United States (third-party plaintiff) in the full amount the United States was required to pay the decedent's estate plus attorneys' fees. However, in a subsequent Order and Supplemental Findings of Fact the court held that the indemnity limiting clause in the Todd-United States prime contract included by reference subcontractors and was applicable to the United States' third-party action against San Francisco Elevator. Thus, the United States' re-covery against San Francisco Elevator was limited to $300,000, together with taxable costs. The sole question presented for review by this court is whether the indemnity provisions of the prime or subcontract involved limit the indemnity rights of the United States in its third-party action against San Francisco Elevator Company.[4]

In Ryan Stevedoring Company v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) the Supreme Court held that stevedores who go aboard a vessel by the owner's consent on an arrangement to perform a service for the ship's benefit impliedly warrant to the ship owner that they will accomplish their task in a workmanlike manner.[5] The Court emphasized that the implied "Warranty of Workmanlike service" finds its origin in contract, rather than tort, and is "comparable to a manufacturer's warranty of the soundness of its manufactured product." *Id.* at 133–34, 76 S.Ct. at 237. *See* Waterman Steamship Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960); Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959). The cited and other Supreme Court cases have involved injuries to longshoremen employed by stevedoring companies. The circuit courts of appeal are in agreement, however, that the workmanlike warranty applies to non-stevedore maritime contractors and subcontractors. *See* United New York Sandy Hook Pilots

2. Various notices of appeal were timely filed by the parties. However, San Francisco Elevator's appeal on the issue of liability was voluntarily dismissed in February 1973 and the United States has chosen not to pursue its appeal on the negligence issue.

3. The basis for the warranty for workmanlike service in maritime contracts is found in Ryan Stevedoring Co. v. Pan-Atlantic S.S., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), in which the Court held that a warranty of workmanlike service ran from a stevedoring company to a shipowner and that such a warranty amounted to an agreement to hold the shipowner harmless.

4. In its Appellee's Brief, San Francisco Elevator attempts to challenge the Government's right to indemnity at all because of its concurrent negligence in creating an unseaworthy ship. However, San Francisco Elevator has not appealed or cross-appealed the district court's determination that the negligence of the United States did not prevent San Francisco Elevator from performing its duties in a workmanlike manner. Thus, the correctness of that holding is not here before us.

5. The "Ryan doctrine" was apparently abrogated by the 1972 amendments to the Longshoremen's and Harbor Workers' Act, 33 U.S.C. § 901 et seq. See 33 U.S.C. § 905(b). However, the amendments are not retroactive and the injuries to the decedent in this case occurred prior to the effective date of those amendments.

Ass'n v. Rodermond Industries, Inc., 394 F.2d 65 (3d Cir. 1968) (subcontractors); H & H Ship Service Co. v. Weyerhaeuser Line, 382 F.2d 711 (9th Cir. 1967) (ship repair contractor); Lusich v. Bloomfield S. S. Co., 355 F.2d 770 (5th Cir. 1966) (ship repair contractor); American Export Lines v. Norfolk Shipbuilding & Drydock Corp., 336 F.2d 525 (4th Cir. 1964) (shipyard contractor); Booth S. S. Co. v. Meier & Oelhaf Co., 262 F.2d 310 (2d Cir. 1958) (engine repair contractor). Moreover, even though the warranty in question is contractual in origin, *Ryan, supra*, the nature of the obligation of a contractor to indemnify a shipowner does not depend upon the existence of privity of contract between the shipowner and contractor. Waterman Steamship Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960). *See* Whisenant v. Brewster-Bartle Operating Co., 446 F.2d 394, 401 (5th Cir. 1971); DeGioia v. United States Lines Co., 304 F.2d 421, 425–26 (2d Cir. 1962). In Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 428, 79 S.Ct. 445, 448, 3 L.Ed.2d 413 (1959) the Court said:

> "We think this case is governed by the principle announced in the *Ryan* case. The warranty which a stevedore owes when he goes aboard a vessel to perform services is plainly for the benefit of the vessel *whether the vessel's owners are parties to the contract or not*." (Emphasis added.)

Furthermore, the concurrent negligence of the shipowner is not necessarily a bar to recovery of indemnity. If the contractor breaches its warranty, and the breach proximately causes liability on the part of the shipowner, then the shipowner is entitled to indemnity unless its own negligent conduct is "sufficient to preclude recovery." Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 355 U.S. 563, 567, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958). " 'Conduct sufficient to preclude recovery' means only conduct on the part of the shipowner which prevents the [contractor's] workmanlike perform-

ance." Brock v. Coral Drilling Co., 477 F.2d 211, 217 (5th Cir. 1973). In this respect, the trial court in the case at bar made a finding that "the negligence of the United States did not prevent the defendant elevator company from doing a workmanlike job."

From the law as set out, *supra*, we conclude that San Francisco Elevator, as the ship repair contractor, owed an independent duty to the shipowner, United States, to perform in a workmanlike manner. The third-party complaint [6] against San Francisco Elevator stated a claim based on the breach of this warranty and was not limited to contractual rights. Although contractual in nature, this independent duty to perform in a workmanlike manner does not require privity of contract between San Francisco Elevator and the United States. San Francisco Elevator owed an independent duty to the United States to perform in a workmanlike manner by virtue of its undertaking to repair the elevator aboard the ship. Failure to so perform was a breach of an independent duty owed to the United States for which the latter is entitled to indemnity for its losses.

We cannot agree, however, with the district court's ruling that the indemnity limiting clause in the prime contract between Todd and the United States limits the United States' indemnity rights over against San Francisco Elevator. Nor does the indemnity provision in the subcontract between Todd and San Francisco Elevator limit San Francisco Elevator's obligation to indemnify the United States. The indemnity action against San Francisco Elevator is independent from any contractual obligation owed by Todd to indemnify the United States pursuant to the prime contract. Furthermore, San Francisco Elevator's agreement to indemnify Todd for its losses in no way affects San Francisco Elevator's independent duty to the United States to perform in a workmanlike manner. This was a direct action by a shipowner against an independent con-

---

**6.** *See* footnote 1, *supra*.

tractor for indemnification pursuant to maritime law. The lack of privity between the shipowner and the contractor does not bar those indemnification rights.

■ Appellee San Francisco Elevator contends that the only indemnity rights the United States has arise from its position as a third-party beneficiary to the subcontract between San Francisco Elevator and Todd. Similarly, San Francisco Elevator argues that it is a third-party beneficiary to the prime contract and is entitled to the benefit of the indemnity limiting clause. The Supreme Court and this circuit have recognized that shipowners are within "the zone of modern law that recognizes rights in third-party beneficiaries" when a stevedore breaches its warranty of service. Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 428, 79 S.Ct. 438, 2 L.Ed.2d 491 (1959); Arista CIA DeVapores, S. A. v. Howard Terminal, 372 F.2d 152, 154 (9th Cir. 1967). The shipowner, however, may recover indemnification whether it is strictly a third-party beneficiary or not. La Capria v. Compagnie Maritime Belge, 427 F.2d 244, 247 (2d Cir. 1970); DeGioia v. United States Lines Company, 304 F.2d 421, 426 (2d Cir. 1962). In any event, the United States was not a third-party beneficiary of the indemnity provision of the subcontract between Todd and San Francisco Elevator. That contract provides only that "[San Francisco] agrees to indemnify and hold harmless [Todd] from any liability . . under [the] government contract arising out of [San Francisco Elevator's] failure to perform in accordance with the terms of said government contract . . . ." This provision of the contract was made for the benefit of Todd and not the United States. Similarly, San Francisco Elevator was not the beneficiary, intended or otherwise, of the indemnity limiting provision of the prime contract. Said provision provides only that "The *Contractor's obligation to indemnity* under this paragraph (c) shall not exceed the sum of $300,000 on account of any one accident or occurrence in respect of any one vessel." (Emphasis added.)

Nothing in this clause could be construed to extend the $300,000 limitation to subcontractors. The limitation clearly applies only to Todd. The district court based its decision on liability on its finding that "there was an implied warranty of workmanlike service by the elevator company running to the United States which was breached; that being so, the United States is entitled to . . . damages that the plaintiff may have sustained and is entitled to receive against the United States." The warranty exists independently of the contractual provisions here involved between the parties. Neither San Francisco Elevator or the United States were third-party beneficiaries of the prime or subcontract indemnity provisions. Accordingly, the order of the district court limiting San Francisco Elevator's indemnity obligation to the United States must be reversed.

■ As a part of its costs in defending the wrongful death suit the United States submitted a bill for attorneys' fees of $21,194.90. It is well settled admiralty law that a shipowner is entitled to recover attorneys' fees where it has been successful in obtaining a judgment on its third-party indemnity action. Arista CIA DeVapores v. Howard Terminal, 372 F.2d 152, 154 (9th Cir. 1967). *See* Brock v. Coral Drilling, Inc., 477 F.2d 211, 217 (5th Cir. 1973); Kelloch v. S & H Subwater Salvage, Inc., 473 F.2d 767, 771 (5th Cir. 1973). The district court recognized this to be the law but found it unnecessary to pass on the reasonableness of the claimed fees because of the erroneous view that the United States' right to indemnity was limited to $300,000.

We hold the United States is entitled to recover from San Francisco Elevator the full amount of the judgment rendered against it and in addition reasonable attorneys' fees incurred in defending itself in the wrongful death suit brought by plaintiffs. The determination of the amount of attorneys' fees allowable shall be determined by the district court on remand.

Reversed and remanded.