**In the Matter of BRETON ISLAND COMPANY, INC., a corporation, for its interest in and to the VESSEL, F/V STANFORD MORSE, for Exoneration from and Limitation of Liability, Plaintiff.**

**BRETON ISLAND COMPANY, INC., Third-Party Plaintiff-Appellant,**

v.

**KENNEDY MARINE ENGINE COMPANY, Third-Party Defendant-Appellee,**

Zane Wilkinson, Claimant.

No. 76–1524.

United States Court of Appeals,
Fifth Circuit.

Feb. 8, 1978.

Rae M. Crowe, Norman E. Waldrop, Jr., Mobile, Ala., Roy C. Williams, Pascagoula, Miss., for third-party plaintiff-appellant.

Jerry O. Terry, Ben E. Sheely, Gulfport, Miss., for third-party defendant-appellee.

---

Before WISDOM and GEE, Circuit Judges, and VAN PELT,[*] District Judge.

WISDOM, Circuit Judge:

This claim for indemnity relies on the longshoreman-shipowner-stevedore triangle blessed in *Ryan Stevedoring Co. v. Pan American Steamship Corporation*, 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133. The relevant facts occurred before the effective date of the Longshoremen's and Harbor Workers' Act Amendments of 1972, 86 Stat. 1265, 33 U.S.C. § 901 et seq.[1] We affirm the district court's holding that the shipowner is not entitled to indemnity under *Ryan*.

The appellee, Kennedy Marine Engine Company, sells and repairs Detroit diesel engines. In September 1972 Kennedy Marine contracted to repair the engine in the F/V Stanford Morse, a shrimp boat owned by the appellant, Breton Island Company, Inc.[2] Kennedy Marine dispatched Zane Wilkinson, an experienced repairman, to do the job.

Wilkinson, who has a history of back trouble, asked for an assistant to help him lift the heavy engine parts. The district judge found that Breton Island had made an oral agreement with Kennedy Marine to furnish assistance to Wilkinson. Nevertheless, when Wilkinson inspected the Stanford Morse engine to determine what repairs were necessary, the captain of the vessel "indicated" that he would not furnish help; he did not specifically refuse help. Wilkinson testified that the next day he telephoned William Kennedy, the president of Kennedy Marine, and told him of the captain's unwillingness to furnish a helper. Kennedy told Wilkinson that the crew would assist him; if they did not, another dock worker, Lazarus Johnson, would help.

When Wilkinson arrived at the Stanford Morse, the captain refused to provide a helper. Johnson was working on another vessel, so he was unable to assist. Wilkinson, therefore, began the job on his own.[3] After working about five hours, Wilkinson reached the point in his task when the engine head, weighing over 200 pounds, had to be lifted. Because he had no helper, Wilkinson attempted to lift the head by using a "come-along" (hoist). While he was trying to balance the head and operate the

[*] Senior District Judge of the District of Nebraska, sitting by designation.

1. In *Seas Shipping Company v. Sieracki*, 1940, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, the Court held that a longshoreman could recover from a shipowner for damages caused by a ship's unseaworthiness. In *Ryan* the Court held that a shipowner liable to a longshoreman (a Sieracki seaman) could recover against the longshoreman's employer in an action for indemnity. Section 905(b), added in 1972, allows Sieracki seamen to bring third party actions against ships for negligence but they may not sue under the unseaworthiness doctrine. The effect of the 1972 amendments is summarized in *Brock v. Coral Drilling, Inc.*, 5 Cir. 1973, 477 F.2d 211, 213 n. 1; Watson, *Broadened Coverage under the LHWCA*, 33 La.L.Rev. 683 (1973); Gilmore and Black, *The Law of Admiralty*, § 6–53 (3d Ed. 1975).

2. William P. Kennedy, III, the principal owner of Breton Island at the time of the accident leading to this lawsuit, was a former president of Kennedy Marine and the brother of Herron

Kennedy, vice president of Kennedy Marine. The district judge found, however, that at the time of the accident William Kennedy had no official position in Kennedy Marine and that the repair contract between Kennedy Marine and Breton Island was strictly a business transaction.

3. Wilkinson testified that after the Stanford Morse captain and Lazarus Johnson refused to help him with the repairs, he called Kennedy Marine to inform the company of the situation. Wilkinson spoke with Loretia Kris, a secretary with supervisory responsibilities. He requested assistance from Kennedy Marine. Wilkinson testified, however, that after speaking with Ms. Kris it was not his understanding that Kennedy Marine would necessarily be able to send a helper.

Wilkinson did not inform the shipowner of his difficulties. Breton Island, however, is charged with the captain's knowledge that no help was forthcoming, since the captain was an agent of Breton Island.

hoist, a boat passed the Stanford Morse. The waves from the boat's wake rocked the Stanford Morse causing Wilkinson to fall across the engine and injure his back.

Wilkinson filed suit against Breton Island in the Circuit Court of Jackson County, Mississippi. He alleged among other things, that the vessel was unseaworthy and that the shipowner negligently failed to provide a safe place for him to repair the engine. Breton Island filed a petition for exoneration and limitation of liability in the federal district court. Breton Island also filed a third party complaint against Kennedy Marine.

Wilkinson's claim was remanded to state court, where it was settled for an amount the parties stipulate was reasonable. After the settlement, Breton Island pressed its third party claim against Kennedy Marine. The denial of that claim is before us on appeal.

This Court summarized the analysis of a claim for *Ryan* indemnity in *Garner v. Cities Service Tankers Corp.*, 5 Cir. 1972, 456 F.2d 476, 481.

> The determination of whether contractual indemnity should be allowed involves a weighing process evaluating the conduct of both parties to determine: (1) whether the warranty of workmanlike performance [WWP] was breached; (2) whether that breach proximately caused the injury; and (3) whether the shipowner's conduct prevented the workmanlike performance.

*See also* 1A Benedict on Admiralty § 119 (7th ed. 1973).

■ The WWP is the stevedore's covenant to perform its work properly and safely. At trial, the parties sharply disagreed on the question whether proper and safe performance of the engine repair job required two workers. Breton Island contended that the job requires two men. Kennedy Marine countered that although two men are usually sent out on a job such as that on the Stanford Morse, this is a matter of convenience and the decision to hire a helper is left to each repairman.[4]

The trial court did not specifically rule on this dispute. It did hold, however, that "Breton Island has failed to prove by a fair preponderance of the credible evidence that Kennedy Marine, through its servant, breached its warranty of workmanlike performance". This holding rests on the conclusion that sending one man to repair the Stanford Morse engine was not unsafe or improper.[5] There is substantial evidence to support the factual conclusions supporting the trial court's finding that Kennedy Marine did not breach its WWP.

■ We agree with the district court that Breton Island's own conduct precludes *Ryan* indemnity under *Weyerhaeuser S. S. Co. v. Nacierna Co.*, 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491. In *Waterman S.S.*

---

4. In this case, Wilkinson did want a helper. Nevertheless Wilkinson elected on his own to continue the work when Breton Island failed to provide assistance.

5. The reading is supported by the trial judge's conclusion under FINDINGS OF FACT that "Wilkinson, in performing his job assignment, did not breach his warranty of workmanlike performance and therefore, the Court finds that the plaintiffs are not entitled to indemnity from Kennedy Marine". Since Wilkinson performed his work assignment alone, this statement must mean that the trial judge was convinced that use of a single repairman for a job such as that on the Stanford Morse is not a breach of the repair company's WWP. The finding refers to Wilkinson's WWP. This is identical, however, to Kennedy Marine's obligation since the

company was acting through Wilkinson and since *Ryan* does not provide for indemnity from individual workmen.

Breton Island draws attention to the trial court's finding that "this accident would have been prevented had Wilkinson been assisted by a helper". That some action by the stevedore—in this case waiting until a helper was available—might have prevented an accident does not automatically mean that failure to take that action constitutes such unsafe and improper performance that the WWP is breached. If it were, *Ryan* indemnity would be due automatically in virtually every case since in retrospect there is almost always something the stevedore could have done to prevent the accident.

*Corp. v. David,* 5 Cir. 1965, 353 F.2d 660, *cert. denied sub nom. Waterman S.S. Co. v. Atlantic & Gulf Stevedorers, Inc.,* 384 U.S. 972, 86 S.Ct. 1863, 16 L.Ed.2d 683, this Court discussed the *Weyerhaeuser* supplement to the *Ryan* doctrine. We interpreted *Ryan* and *Weyerhaeuser* in light of contractual principles and concluded that the *Weyerhaeuser* bar to recovery applies whenever a shipowner's conduct prevents or hinders the stevedore's workmanlike performance. 353 F.2d at 665.[6] The evaluation of the shipowner's conduct involves a weighing process, 353 F.2d at 666.

The district judge found that Breton Island entered into an oral contract to provide a helper for Wilkinson. The evidence is more than sufficient to support that finding. Kennedy Marine relied upon that contract as a means of supplying two men for the repair job. As the district judge found, the shipowner breached the contract when it "failed to furnish assistance" to Kennedy Marine. In doing so, it certainly hindered Kennedy Marine's good faith efforts to obtain an assistant for Wilkinson.

Breton Island argues that Kennedy Marine's WWP required Wilkinson to stop work when he became aware of an unsafe or unseaworthy condition. *See, e. g., Brock v. Coral Drilling, Inc.,* 5 Cir. 1973, 477 F.2d 211. In all the cases cited by Breton Island, however, the danger was more apparent than in this case. In none of them had the parties anticipated the unsafe condition and contracted to have the shipowner eliminate it. Wilkinson knew of the agreement, and he could have interpreted Breton Island's refusal to provide a helper as encouragement to continue the work without a helper. Such encouragement would also hinder

Kennedy Marine's efforts to perform its work safely. *See Thompson v. Trent Maritime Co.,* 3 Cir. 1965, 353 F.2d 632.

The *Ryan* doctrine is premised on the idea that "liability should fall upon the party best situated to adopt preventive measures and thereby to reduce the likelihood of injury". *Italia Societa Per Azioni di Navigazione v. Or. Stevedoring Co.,* 376 U.S. 315 at 324, 84 S.Ct. 748, 754, 11 L.Ed.2d 732. In their oral contract, Kennedy Marine and Breton Island agreed that the latter was in a better position to supply a helper, if one was needed. The *Ryan* doctrine was not designed to relieve Breton Island of the consequences of breaching its agreement to provide assistance.

In sum, we cannot find fault with the district court's holding that when Kennedy Marine sent one workman to repair the Stanford Morse engine, it did not perform its job in such an unsafe and improper manner that it breached its warranty of workmanlike performance. If unsafe conditions did result from Kennedy Marine's use of one man, they were caused by Breton Island's failure to perform its contract to provide a helper.

The judgment is AFFIRMED.

---

**6.** In *Brock v. Coral Drilling, Inc.* we stated that " 'conduct sufficient to preclude recovery' means only conduct on the part of the shipowner which prevents the stevedore's workmanlike performance". 477 F.2d at 217. *Brock* cites *Waterman,* apparently picking up one sentence in the *Waterman* opinion with this language. A reading of the entire *Waterman* opinion, however, shows that the *Waterman* rule is that conduct which prevents or hinders workmanlike performance can be conduct sufficient to preclude recovery under *Weyerhaeuser. Brock's* citation without com-

---

ment of *Waterman* shows that the Court did not intend to change the *Waterman* holding.