Charles P. LeBLANC, Plaintiff,

v.

TWO–R DRILLING COMPANY,
Defendant Third-Party
Plaintiff-Appellant,

v.

GULF COAST CASING CREWS, INC.,
Third-Party Defendant-Appellee,

Highlands Insurance Company,
Intervenor-Appellee.

No. 74–3268.

United States Court of Appeals,
Fifth Circuit.

March 3, 1976.
Rehearing Denied March 26, 1976.

W. K. Christovich, New Orleans, La., for Highlands Ins. Co.

John R. Martzell, New Orleans, La., for LeBlanc.

Before BROWN, Chief Judge, GEWIN and THORNBERRY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This might be the last voyage of the now obsolete and statutorily drydocked judge-made legal principle for indemnity for breach of the WWLP.[1] Such third-party complaint is but one leg of the once familiar triangular law suit between the troika of suitors, *Sieracki seaman v. shipowner v. maritime contractor.*[2] *Ryan Stevedoring Company v. Pan-Atlantic Steamship Corporation,* 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, 1956 AMC 9; *Sea Shipping Company v. Sieracki,* 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, 1946 AMC 698. Two issues come to us on this appeal: (i) whether or not Two–R (Shipowner)[3] is entitled to indemnity from the injured employee's employer, Gulf Coast Casing Crews, Inc.[4] (Contractor)

Charles Hanemann, Philip E. Henderson, Houma, La., for defendant third-party plaintiff-appellant.

1. The 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C.A. § 901 *et seq.* have for all practical purposes done away with the triangular suit between maritime worker, shipowner and contractor. The pertinent legislative history clearly states this objective as follows:

   "The Committee also believes that the doctrine of the *Ryan* case, which permits the vessel to recover the damages for which it is liable to an injured worker where it can show that the stevedore breaches an express or implied warranty of workmanlike performance is no longer appropriate if the vessel's liability is no longer to be absolute, as it essentially is under the seaworthiness doctrine. Since the vessel's liability is to be based on its own negligence, and the vessel will no longer be liable under the seaworthiness doctrine for injuries which are really the fault of the stevedore, there is no longer any necessity for permitting the vessel to recover the damages for which it is liable to the injured worker from the stevedore or other employer of the worker.

   Furthermore, unless such hold-harmless, indemnity or contribution agreements are prohibited as a matter of public policy, vessels by their superior economic strength could circumvent and nullify the provisions of Section 5 of the Act by requiring indemnification from a covered employer for employee injuries." Add. B, pp. 48–49; 1972 U.S.Code Congressional and Administrative News, p. 4704.

2. LeBlanc, the injured employee, settled his case against Shipowner (App. 272–75) and the only portion of the three cornered Donnybrook tried and the subject of this appeal is shipowner's third-party indemnity action against Contractor.

3. "Shipowner" is used because of the traditional relationship although a submersible drilling rig is hardly a blue water vessel or its crew blue water sailors.

4. Some of the earlier cases in which this Court was confronted with WWLP issues are in chronological order, *D/S Ove Skou v. Hebert,* 5 Cir., 1966, 365 F.2d 341, 1966 AMC 2223; *Boutte v. M/V Malay Maru,* 5 Cir., 1967, 370 F.2d 906, 1967 AMC 2149; *Grigsby v. Coastal Marine,* 5 Cir., 1969, 412 F.2d 1011, 1969 AMC 1513.

and its insurer, Highlands Insurance Company and (ii) whether or not Contractor is entitled to recoupment of compensation and medical payments made to the injured employee pursuant to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C.A. § 901 *et seq.*

The trial court ruled that Shipowner was in "control" of the operation and accordingly was not entitled to indemnity and furthermore should be required to reimburse Contractor for the compensation and medical payments made to the injured employee. We hold that the trial court applied the wrong standard in deciding that Shipowner alone was liable for the injury and we reverse and remand with instructions that the Court make findings of fact and conclusions of law [5] in accordance with the legal standards we set out.[6]

### Facts

Shipowner was the owner of a submersible drilling barge which all parties concede to be a vessel. On November 18, 1971, the rig was on location in the Lake Pelto field, Terrebonne Parish, Louisiana, to drill a well pursuant to a contract between it and Texaco, Inc.

When the well reached the desired depth, it became necessary to remove, or lay down, the drill string from the hole before running casing into the hole. Traditionally, members of the crew of the drilling rig had performed the entire lay down operation,[7] but on the occasion in question, Texaco engaged contractor, to send a crew of one pusher and four hands to coordinate with Shipowner's drilling crew in the lay down. This engagement was governed by a written contract between Texaco and Contractor.[8] LeBlanc, the injured employee who was a seasoned, knowledgeable and experienced oil field worker, was, in oil field parlance, the pusher of the Contractor's crew.

In drip dry form the function performed by the Shipowner's rough neck crew in the lay down operation was to remove the pipe from the hole, disconnect each segment, and place it on the pipe rack via the so-called "V" door. The Shipowner's driller controlled the draw works of the rig. The Contractor's employees were responsible for moving the pipe from the pipe rack to a barge tied to the submersible rig by utilizing a stiff-leg crane which was operated by LeBlanc. Two of the Contractor's employees were stationed on the pipe rack, two were on the barge and of course LeBlanc was at the controls of the crane which was situated on the same level as the rig floor.

The pipe rack was approximately 8 to 10 feet below the rig floor and connected to it by a stairway which had a landing which was on the same level as the rig floor. A mud guard, which is a steel barrier about 13 inches high, separated the rig floor from the landing and was designed to prevent drilling mud from getting on the landing and the pipe rack below.

When Contractor's crew arrived at the rig the drilling floor of the rig, the pipe rack below the floor, and all three stairways connecting the drilling floor and the lower level, on which the pipe rack was located, were in good and safe condition, and free of foreign substances.[9]

Before the lay down, Shipowner had been engaged in drilling operations, in which drilling mud is necessarily used. Mud, mixed with water and chemicals, is pumped into the hollow core of the drill string, and out through openings in the bit into the space between the exterior of the drill string and the wall of the hole, essentially for lubrication and to

---

**5.** F.R.C.P. 52(a) requires that in actions tried upon the facts without a jury the Court should make findings of fact and conclusions of law.

**6.** We do not reach the issue of recoupment for LHWCA payment since this follows almost as a matter of course the resolution of the WWLP indemnity issue.

**7.** App. 205–06.

**8.** *See* Exhibit Two–R–1, App. 260–61.

**9.** App. 119–20, 141–42.

lessen sloughing of the wall of the hole. When the drill pipe is pulled out of the hole and tailed across the floor to the "V" door, it is practically impossible to keep some drilling mud or muddy water from the drilling floor. Certain techniques are available to reduce the amount of mud spilled from the drill pipe onto the floor, and were in use on the day of the accident.[10]

During the lay down on November 18, 1971, some drilling mud and water accumulated on the drilling floor of Shipowner's rig and apparently was tracked onto the landing and stairway going down to the pipe rack by Contractor's employees.[11]

As LeBlanc began to descend the stairs from the drilling floor to the pipe rack, he slipped on the landing, fell down the stairs, and injured his left leg. LeBlanc testified that though he knew the stairway was slippery, neither he nor any other employee of Gulf Coast had taken any steps to remove mud from their shoes, the pipe rack, the handrails, the stairs, or the landing at the top of the stairs. Nor had they complained to Shipowner of the presence of mud on the stairs, landing and pipe rack, or ask Shipowner to suspend operations until the condition was remedied.[12]

### The WWLP

■ Under the old regime of law, which is applicable in this case, a shipowner had a duty to Sieracki seamen to furnish a seaworthy ship and he was strictly liable for injury resulting from an unseaworthy condition. *See Sea Shipping Company v. Sieracki, supra*; *Mitchell v. Trawler Racer*, 1960, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 41, 1960 AMC 1503. All parties in this case agree that the muddy landing and stairway constituted an unseaworthy condition but the inquiry does not stop here, for in *Ryan, supra*, the Supreme Court held that a shipowner may be entitled to indemnity from the stevedore company for breach of the WWLP.[13] *See also* 1A Benedict on Admiralty § 119 at 6–27 *et seq.* (6th ed. 1974).

This indemnity action, which has its origin in contract,[14] in essence requires the stevedore company to perform its work "properly and safely" and the Court emphasized that "competence and safety are inescapable elements of the stevedore's undertaking". 350 U.S. 124, 133, 76 S.Ct. 232, 237, 100 L.Ed. 133, 142, 1956 AMC 9, 17. Our Court has phrased this duty as "the contractual obligation to perform duties under a contract with reasonable safety". *Garner v. Cities Service Tankers Corp.*, 5 Cir., 1972, 456 F.2d 476, 481, 1972 AMC 1980, 1987; *accord Parfait v. Jahncke Service, Inc.*, 5 Cir., 1973, 484 F.2d 296, 301–02, 1973 AMC 2447, 2452; *Brock v. Coral Drilling, Inc.*, 5 Cir., 1973, 477 F.2d 211, 215, 1973 AMC 1117, 1121.

■ The trial court, however, misplaced the emphasis by determining liability on the basis that Shipowner had both the ultimate control of the drilling

---

**10.** App. 70–72, 111, 150, 153, 171, 177.

**11.** App. 115, 120–24, 127–28, 178–79.

**12.** App. 120–26, 178–30.

**13.** *See, e. g., Burrage v. Flota Mercante Grancolombiana S.A.*, 5 Cir., 1970, 431 F.2d 1229, 1232–33, 1970 AMC 2254, 2257; *Grigsby v. Coastal Marine Service of Texas, Inc.*, 5 Cir., 1969, 412 F.2d 1011, 1040–41, 1969 AMC 1513, 1554.

**14.** The Court in *Ryan* stressed that this implied warranty is "comparable to a manufacturer's warranty of the soundness of its manufactured product". 350 U.S. 124, 134, 76 S.Ct. 232, 237, 100 L.Ed. 133, 142, 1956 AMC 9, 17. Of course, privity of contract does not exist

between Shipowner and Contractor here since the work agreement is between Texaco, Inc., and Gulf Coast. App. 260–61. But privity of contract is not necessary in this setting because Shipowner is in effect a third party beneficiary of Contractor's WWLP as to Texaco. *See Whisenant v. Brewster-Bartle Offshore Company*, 5 Cir., 1971, 446 F.2d 394, 401, 171 AMC 1783, 1791. *See also Brock v. Coral Drilling, Inc.*, 5 Cir., 1973, 477 F.2d 211, 215, n.4, 1973 AMC 1117, 1121. *Accord Waterman S/S Corp. v. Dugan and McNamara, Inc.*, 1960, 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169, 1960 AMC 2260; *Crumady v. Joachim Hendrik Fisser*, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413.

project and responsibility for the successful completion of the lay down operation, as well as the direction of Contractor's crew by Shipowner's pusher.[15] Rather, the Court should have determined whether Contractor breached its WWLP by failing to perform the task in a reasonably safe manner. *See also* Gilmore and Black, *The Law of Admiralty*, p. 442–46 (2d ed. 1975).

▪ The result is that it is not the usual situation in which the test is whether factfindings meet the F.R.C.P. 52(a) Plimsoll line. For findings induced by incorrect legal standards have no standing. *Perkins v. State of Mississippi*, 5 Cir., 1972, 455 F.2d 7, 12–13 (Brown, C. J., dissenting); *Battelstein Investment Co. v. United States*, 5 Cir., 1971, 442 F.2d 87, 92. Consequently a remand is required.

*Factfindings Pertinent To WWLP*

To determine whether Contractor breached its WWLP in this factual setting the Court on remand should endeavor to make the following factual determinations:

▪ (i) Whether or not Contractor through its employees including the injured pusher LeBlanc was or should have been aware of the dangerous condition of the stairway taking into consideration the possible negligence of its employees as well as contributory negligence of LeBlanc as a *factor* in this determination. *See Julian v. Mitsui O.S.K. Lines, Ltd.*, 5 Cir., 1973, 479 F.2d 432, 433, 1973 AMC 1477, 1478; *Lusich v. Bloomfield Steamship Company*, 5 Cir., 1966, 355 F.2d 770,

778, 1966 AMC 191, 202–203; *United States v. Williams*, 5 Cir., 1966, 365 F.2d 332, 336, 1966 AMC 2418; *D/S Ove Skou v. Hebert*, 5 Cir., 1966, 365 F.2d 341, 350, 1966 AMC 2223.[16]

▪ (ii) If the trial court finds that Contractor was aware of the dangerous condition or its employees had produced it by tracking the slime on or over the stairway steps, the Court should then determine whether Contractor itself took steps (a) to remedy the unsafe condition, (b) inform Shipowner of the condition and request Shipowner or his crew to remedy the situation, and (c) on Shipowner's failure or refusal to correct the condition whether Contractor suspended operations. *Brock v. Coral Drilling, Inc.*, *supra*, 477 F.2d at 216, 173 AMC at 1123; *see also Burrage v. Flota Mercante Grancolombiana*, *supra*.

▪ A shipowner seeking indemnity must of course bear the burden of proof to show that the contractor breached its WWLP. *See Lusich v. Bloomfield, S/S Company, supra*; *Rederi A/B Dalen v. Maher*, 4 Cir., 1962, 303 F.2d 565, 1962 AMC 1944; *Russo v. Flota Mercante Grancolombiana, et al.*, S.D.N.Y., 1969, 1970 AMC 162, 168. But in making these findings the Court should be mindful of the underlying rationale of the *Ryan* WWLP doctrine, which is, in the words of the Supreme Court, that "liability should fall on the party best suited to adopt preventive measures and thereby reduce the likelihood of injury". *Italia Societa per Azioni Di Navigazione v. Oregon Stevedoring Company*, 1964, 376 U.S. 315, 324, 84 S.Ct. 748, 754, 11 L.Ed.2d 732, 740, 1964 AMC 1075, 1082.

**15.** The Court's order provides in pertinent part:

> Under the facts as adduced at the trial, the *Ryan* doctrine is clearly inapplicable. Unlike the circumstances between a stevedore and a shipowner, where the stevedore takes over control of the vessel for the purpose of unloading, Gulf Coast was, according to the testimony of numerous witnesses, including Two–R's own expert witness, at all times during the operation subject to the orders of the Two–R tool pusher.

App. at 239.

**16.** Several courts have gone a step further and held that the employees' contributory negligence is directly imputed to his employer, the contractor. *See, e. g., U. S. Lines v. Jarka Co.*, 4 Cir., 1971, 444 F.2d 26, 1971 AMC 1351; *McLaughlin v. Trelleborgs Angfartygs A/B*, 2 Cir., 1969, 408 F.2d 1334, 1969 AMC 1387, *cert. denied, sub. nom., Golten Marine Company v. Trelleborg Angfartygs A/B et al.*, 395 U.S. 946, 89 S.Ct. 2020, 23 L.Ed.2d 464; *Vaccaro v. Alcoa S/S Company, Inc.*, 2 Cir., 1968, 405 F.2d 1133, 1969 AMC 503; *see also* Gilmore and Black, *The Law of Admiralty*, 446 (2d ed. 1975).

### Legal Conclusions To Be Drawn

After the Court makes the factual determinations described above he must then draw the legal conclusion whether WWLP indemnity should be allowed. This involves "a weighing process evaluating the conduct of both parties to determine (1) whether the WWLP * * was breached, (2) whether the breach proximately caused the injury, and (3) whether the shipowner's conduct prevented the workmanlike performance". *Garner v. City Service Tankers Corp.,* 5 Cir., 1972, 456 F.2d 476, 481, 1972 AMC 1980, 1987; *see also Parfait v. Jahncke Service, Inc.,* 5 Cir., 1973, 484 F.2d 296, 302, 1973 AMC 2447, 2453; *accord McCawley v. Ozeanosun Compania Maritime, S.A.,* 5 Cir., 1974, 505 F.2d 26, 28, —— AMC ——, ——, *citing, Waterman S/S Company v. David,* 5 Cir., 1965, 353 F.2d 660, 1966 AMC 30.

■ Some explanation seems appropriate concerning the third element above, which is a fact-law question based on the rationale that indemnity is inappropriate when the shipowner's negligence or the vessel's unseaworthiness is found to be so serious as to handicap the contractor in performing its job in a safe and workmanlike fashion. *Brock v. Coral Drilling, Inc., supra,* at 477 F.2d 211, 217, 1973 AMC 1117, 1124; *Southern Stevedoring and Contracting Company v. Hellenic Lines,* 5 Cir., 1968, 388 F.2d 267, 1968 AMC 573; *O/S Ove Skou v. Hebert, supra* at 351, 1966 AMC at 23; *Albanese v. N. V. Nederl Amerik Stoomv Meats, etc.,* 2 Cir., 1965, 346 F.2d 481, 1965 AMC 1201; *Waterman S/S Corporation v. David, supra.* The question will be whether conduct or circumstances of the condition for which Shipowner has a legal responsibility seriously impeded or prevented Contractor from performing the job in a safe and workmanlike manner.

The upshot—in what it may be too optimistic to hope is the dying gasp of the amphibious WWLP—is that the cause must be remanded for reconsideration in the light of these principles either on the present record or as supplemented as the parties and the District Court reasonably think necessary or appropriate.

Reversed and remanded.