557 F.2d 1168
 Henry WILEY, Plaintiff-Appellee,
v.
STENSAKER SCHIFFAHRTSGES, Defendant-Third-Party Plaintiff-Appellant,
v.
STEVENS SHIPPING & TERMINAL COMPANY, Third-Party Defendant-Appellee,
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY, Intervenor-Appellee.
 No. 75-3888.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 22, 1977.
 
 Gustave R. Dubus, III, Savannah, Ga., William E. Wright, New Orleans, La., for defendant-third-party plaintiff-appellant.
 Barnard M. Portman, Savannah, Ga., for H. Wiley.
 Edward T. Brennan, John W. Minor, Jr., Savannah, Ga., for Hartford, Etc. and Stevens.
 Appeal from the United States District Court for the Southern District of Georgia.
 Before TUTTLE, MORGAN and HILL, Circuit Judges.
 TUTTLE, Circuit Judge:
 
 
 1
 We find that Chief Judge Brown, writing for this Court in LeBlanc v. Two R Drilling Co., 5 Cir., 527 F.2d 1316 (1976) was overly optimistic when he said: "This might be the last voyage of the now obsolete and statutorily drydocked judgemade legal principle for indemnity for breach of the WWLP (warranty of workmanlike performance)." We have here another such case which is adequately described in appellant's brief in the following terms:
 
 
 2
 "This is a typical pre-amendment third party (longshoreman-shipowner-stevedore) case involving claims by Henry Wiley against Stensaker Schiffahrtsges, owner of the SS Hansa Trade, based upon alleged unseaworthiness and negligence, coupled with the claimover of Stensaker v. Stevens Shipping & Terminal Co., Wiley's stevedore employer, based upon the alleged breach by Stevens of the warranty of service owed Stensaker. . . ."
 
 
 3
 The jury, to whom the case was submitted, both upon the liability of the defendant shipowner and the cross-claim against the stevedore, heard evidence which would permit it to find that Wiley, while working for Stevens, slipped and injured his back while descending a ladder aboard the SS Hansa Trade; that at the time of the injury Wiley was engaged in loading a type of clay, which loading was accomplished by blowing the light dust-like particles of the clay into the hold of the vessel; that after a short operation in the morning a delay was called on account of rain and Wiley and his companion Smith climbed up a plain steel ladder extending some 30 feet from the lower hold of the ship; that at the termination of the work stoppage Wiley descended the ladder through an open manhole at a time when the deck of the ship was wet and when there was evidence that there was a light film of clay dust and water on the rung near the bottom of the ladder from which Wiley slipped and fell; Wiley was unable to see below his feet as he descended the ladder, and neither he nor Smith had any difficulty climbing the ladder to leave prior to the stoppage of work; the manhole cover was open long enough to permit Smith and Wiley to exit at the top of the ladder and to permit them to return and the record is unclear as to whether it was closed during the time that work was in suspension. The evidence was in dispute as to whose duty it was to maintain a cover over the manhole in the event of inclement weather. Evidence would have justified the jury finding that it was either the responsibility of the stevedore or of the ship or of both of them.
 
 
 4
 There was also introduced in evidence certain safety and health Regulations for Longshoring which provide as follows:
 
 
 5
 "(A) There shall be at least one safe and accessible ladder for each gang working in a hatch.
 
 
 6
 (B) When any fixed ladder is visibly unsafe, the employer shall prohibit its use by employees.
 
 
 7
 (C) Slippery conditions shall be eliminated as they occur."
 
 
 8
 The jury found the ship was unseaworthy and that the shipowner was negligent and that a violation of one or more of these regulations had occurred, without specifying which regulation was violated by the ship. The jury also found that the plaintiff was not guilty of contributory negligence.
 
 
 9
 As to the third party complaint by the shipowner against the stevedore, the jury found that the stevedore had not violated its warranty of workmanlike performance.
 
 
 10
 The defendant and cross-appellant appeals from judgments carrying both jury verdicts into effect. The shipowner contends that the trial court should have directed a verdict in its favor and against the plaintiff; that it should have directed a verdict in favor of the shipowner against Stevens, the stevedore; that the trial court erred in failing to grant shipowner a judgment notwithstanding the verdict or in the alternative a new trial with respect to the plaintiff's claim against it and its claim against Stevens and finally, that the award was excessive. Appellant also has a catch-all clause criticizing the trial court for improperly "charging the jury, structuring the charge improperly, failing to sever the claims, refusing to give certain charges requested by Stensaker; recharging the jury, causing confusion and leaving the jury with no understanding of the distinction between Stensaker's obligations to Wiley and Stevens' obligation to Stensaker." We need not deal with this contention because the points urged have not been properly preserved for our review on appeal.
 
 
 11
 As indicated in the opening paragraph of this opinion, the 1972 amendment to the Longshoremen's and Harborworkers' Compensation Act, 33 U.S.C. § 901 et seq. have for all practical purposes done away with the triangular suit between maritime worker, shipowner and longshore contractor. See LeBlanc v. Two R Drilling Co., supra, at 1317.[1]
 
 
 12
 Presenting the combined cases, the one for the plaintiff against the ship, and the other, the case of the ship against the stevedore to a jury under a single charge at a single trial, poses a difficult problem for court and litigants in making certain that each of the parties is viewed as to the other parties in the litigation in the proper legal relationship. For instance, here, the appellant claims that as a matter of law the only basis for a determination by the jury that the vessel breached its duty of furnishing a seaworthy vessel was the conduct of Wiley himself; that Wiley's conduct is chargeable to his employer and, therefore, as a matter of law if Wiley is not barred by his own negligence, the ship is entitled to recover against the stevedore as the only perpetrator of the evil condition or thing that brought about the injury.
 
 
 13
 Appellant is of the view that it was impossible for the jury adequately to appreciate the possibility that even though Wiley was found not to be negligent, he might nevertheless have caused his employer, Stevens, to breach its warranty of workmanlike performance and thus be required to respond to the ship in indemnity for its obligation to pay the judgment to Wiley. Appellant urges that the trial court erred in not directing a verdict against Wiley on account of his negligence and against Stevens on account of the fact that if negligence there was, it was negligence only of Stevens and that the ship should be absolved.
 
 
 14
 Our main difficulty with this approach is that this is a jury trial as to which the constitutional mandate says: "No fact tried by a jury, shall be otherwise reexamined in any court of the United States, then according to the rules of the common law." U.S.Const. Seventh Amend. The standard applied by this Court in determining whether a case should be submitted to a jury is outlined in Boeing Co. v. Shipman, 5 Cir., 411 F.2d 365. In that case, this Court said:
 
 
 15
 "On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence not just that evidence which supports the non-mover's case but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury."
 
 
 16
 We have carefully considered the record in this case and have no doubt but that the jury's finding of unseaworthiness by reason of the conditions that existed at the moment of Wiley's slip and fall was adequately supported. The fact that the ship permitted a loading practice which placed powdered clay particles throughout the hold in which men were working on a straight up-and-down steel runged ladder which was open to the elements was sufficient, in light of the undisputed evidence that the wetting of such clay particles, even in a light film, would create the slippery condition, to carry the day for the plaintiff both under ordinary principles of seaworthiness and by virtue of the violation of the regulations. This was strictly a jury question.
 
 
 17
 Similarly, the question of whether Wiley had sufficient advance knowledge of the presence of the dust mud on the lower rung of the ladder as he descended, following the break is strictly a matter for the jury. As we have already indicated, the jury could find that the ladder was safe when he left the hold of the ship, but that on account of the settling of the additional powdered clay and the addition of moisture following his leaving the hold, conditions changed at a time prior to his becoming aware of them. It is rare indeed that an appellate court interferes with a jury verdict dealing with contributory negligence. This is not one of such rare cases.
 
 
 18
 The principal thrust of the appellants' argument that they are entitled as a matter of law to a verdict and judgment of indemnification against the stevedoring company is that the only acts or conditions that could bring about the shipowner's liability to Wiley were acts performed by Wiley himself, which are chargeable to Stevens, the stevedore. The difficulty with this proposition is that it is impossible for us to discern from this record the basis on which the jury made a finding of unseaworthiness and a finding of negligence on the part of the ship. It is within the realm of possibility that the element of unseaworthiness found by the jury was conditions which, though caused by Wiley, may not have met the standard required to charge contractor with the claim of failing to perform its duties "with reasonable safety," Johnson v. Warrior & Gulf Navigation Co., supra. As stated in the Johnson case: "Under an implied warranty of workmanlike performance, it is the stevedore's duty to perform its services properly and safely in the face of known defects, Burrage v. Flota Mercanti Grancolombiana, 431 F.2d 1229 (5th Cir. 1970)." The question here is whether the conditions of the rung of the steel ladder which brought about Wiley's unfortunate fall were known to the third-party defendant. Of course knowledge to Wiley would have been knowledge to his employer, but as already indicated, the jury was not required to determine that Wiley knew of the dangerous condition when he stepped on the lower rung of the ladder upon returning from the work interruption.
 
 
 19
 Appellant comments on the LeBlanc case, supra, as supporting his contention that the stevedore should be held liable as a matter of law, especially that part of the opinion which says:
 
 
 20
 "If the trial court finds that contractor was aware of the dangerous condition or its employees had produced it by tracking the slime on or over the stairway steps, the court should have then determined whether contractor itself took steps (a) to remedy the unsafe condition, (b) inform shipowner of the condition and request shipowner or his crew to remedy the condition, and (c) on shipowner's failure or refusal to correct the condition whether contractor suspended operations. . . ."
 
 
 21
 527 F.2d at 1320.
 
 
 22
 It will be noted that this Court did not direct the entry of a judgment against the employer in the LeBlanc case even though the Court said in its opinion:
 
 
 23
 "During the laydown on November 18, 1971 some drilling mud and water accumulated on the drilling floor of shipowner's rig and apparently was tracked onto the landing and stairway going down to the piperack by contractor's employees.
 
 
 24
 As LeBlanc began to descend the stairs from the drilling floor to the piperack he slipped on the landing, fell down the stairs and injured his left leg. LeBlanc testified that though he knew the stairway was slippery, neither he nor any other employee of Gulf Coast had taken any steps to remove mud from their shoes, the piperack, the hand rails, the stairs, or the landing at the top of the stairs nor had they complained to shipowner of the presence of mud on the stairs, landing and piperack, or asked shipowner to suspend operations until the condition was remedied. (Footnote omitted)."
 
 
 25
 Thus in a fact situation which was before the Court of Appeals in a posture which would have permitted a final determination that the contractor was liable by holding merely that the trial court was clearly erroneous, this Court, instead, remanded for further proceedings. It is much clearer here that this Court should not make a finding of fact as a substitute for this jury's verdict when the liability of the contractor was no more strongly indicated than in LeBlanc.
 
 
 26
 In Johnson v. Warrior & Gulf Navigation Co., supra, this Court did reverse a judgment in favor of the contractor on the ground that it was clearly erroneous, but in doing so it construed one of the subsidiary findings of fact by the trial court in a manner that would require a finding that the stevedore's failure "was a contributing factor to Johnson's accident," 516 F.2d at 77. Moreover, the court was not there faced with the Seventh Amendment requirement with respect to a jury trial.
 
 
 27
 Appellant was not entitled to a judgment n. o. v. as against Stevens.
 
 
 28
 We finally come to the appellant's claim that the jury verdict of $250,000 was excessive. As a result of his injury, the testimony on behalf of the plaintiff indicated that he was some 60% disabled. He was 49 years old and had a 21 year expectancy. He had a fourth grade education. He had worked on the waterfront for 25 years and had a regular wage scale of approximately $5 per hour and of $6.80 straight time and $10.20 for overtime at the time of trial. Straight time on a 40 hour week at this rate would be $1,169.60 per month. The evidence as to Mr. Wiley's pain and inability to perform his ordinary duties was undisputed. He testified that he had to wear a brace all of the time and that he was in pain all of the time. He testified that he could not sit still more than a short period of time and that he has difficulty in walking or standing. The plaintiff attempted to go back to work but the pain was too severe. This testimony was consistent with the evidence given by his medical witness. No evidence, medical or otherwise, was offered by the defendant.
 
 
 29
 It has been said by this Court that "a federal appellate court does not undertake to determine whether a verdict is excessive in fact but only whether it is excessive in law," Fruit Industries, Inc. v. Petty, 5 Cir., 268 F.2d 391, 395, citing New Amsterdam Casualty Co. v. Wood, 5 Cir., 253 F.2d 71, Atlantic Coast Line R. R. Co. v. Pidd, 5 Cir., 197 F.2d 153, Whiteman v. Pitrie, 5 Cir., 220 F.2d 914 and Atlantic Coast Line R. R. Co. v. Kammerer, 5 Cir., 239 F.2d 115. The standard which we have used to determine whether such a verdict is excessive in law is spoken of in terms of the verdict being so large as to show "passion or prejudice" or so large as to "shock the conscience." We also repeat, what we have previously said:
 
 
 30
 "Comparison of verdicts rendered in different cases is not a satisfactory method for determining excessiveness vel non in a particular case and . . . each case must be determined on its own facts."
 
 
 31
 268 F.2d at 395.
 
 
 32
 We conclude that although the verdict in this case was undoubtedly on the generous side, there is no basis on which we can determine that it was excessive as a matter of law.
 
 
 33
 The judgments are AFFIRMED.
 
 
 
 [1]
 The need for such amendments was great. This litigation gives some considerable strength to the argument that the pre-amendment triangular litigation was less than totally effective, for under the law as it then stood, and as it applies in the instant case, a plaintiff longshoreman could obtain a recovery against a vessel and its owners if he was injured about the ship while performing his proper stevedoring duties by virtue of a defect in the ship's equipment, conditions of work or the like and the shipowner could recover over against the stevedore's employer if the finder of facts determined that the condition or occurrence which brought about the plaintiff's injury was occasioned by a failure of the stevedoring employer to perform its duties under its contract with the shipowner with reasonable safety. See Johnson v. Warrior & Gulf Navigation Co., 5 Cir., 516 F.2d 73 (1975) in which we said: "The shipowner and the stevedore are under reciprocal obligations: the shipowner to provide a seaworthy vessel and to refrain from hindering performance by the stevedore and the stevedore to perform its duties with reasonable safety. Garner v. Cities Service Tankers Corp., 456 F.2d 476 (5th Cir. 1972); Waterman Steamship Corp. v. David, 353 F.2d 660 (5th Cir. 1965), cert. denied 384 U.S. 972, 86 S.Ct. 1863, 16 L.Ed.2d 683 (1966)."