**HERCULES, INC., Plaintiff,**

v.

**STEVENS SHIPPING CO., INC., et al., Defendants.**

**DETCO TOWING CO., INC., Defendant–Appellee,**

v.

**AETNA CASUALTY & SURETY CO., Intervenor–Appellant.**

**HERCULES, INC., Plaintiff,**

v.

**STEVENS SHIPPING CO., INC., et al., Defendants.**

**ESCAMBIA TREATING CO., Defendant–Appellant,**

v.

**DETCO TOWING CO., INC., Defendant–Appellee.**

Nos. 78–1505, 78–1887.

United States Court of Appeals, Fifth Circuit.

Oct. 31, 1980.

Rehearing En Banc Granted Jan. 6, 1981.

George D. Gabel, Jr., Jacksonville, Fla., H. Edward Moore, Jr., Pensacola, Fla., for Escambia Treating Co.

Albert Fendig, Jr., Brunswick, Ga., Brunswick G. Deutsch, Allen F. Campbell, New Orleans, La., for Aetna Casualty & Surety Co.

Gustave R. Dubus, III, Savannah, Ga., for Detco.

Ralph O. Bowden, III, Robert S. Glenn, Jr., Savannah, Ga., for other interested parties.

Before GODBOLD, GARZA and RANDALL, Circuit Judges.

GARZA, Circuit Judge:

We have before us appeals by Escambia Treating Company and the Aetna Casualty and Surety Company from summary judgment in favor of appellee Detco Towing Company. Both the facts giving rise to this litigation and the procedural history of the case are somewhat complex, and require extended treatment.

The issues on appeal revolve around the contractual relationships among certain of the parties to this lawsuit, and a one–year limitation of action period contained in one of the contracts. On April 25, 1975, Escambia, the owner of a cargo of telephone logs, entered into a voyage charter party agreement with Hercules Incorporated for the transportation of this cargo from Brunswick, Georgia to San Juan, Puerto Rico on Hercules' barge, the HERWOOD.

Hercules was party to a towing agreement with Detco, by which that company had agreed to provide towage service for the HERWOOD. This contract had been entered in November of 1974, and was amended on April 23, 1975, to set out towage rates pertinent to voyages "on behalf of Escambia Treating Company." The amendment expressly made all terms of the November 1974 agreement applicable to such voyages.

Among those terms was a requirement that any suit for loss or damage arising from performance of the contract be brought within one year after the delivery of the tow and cargo, the language of the term · substantially following that of § 1303(6) of the Carriage of Goods by Sea Act [COGSA], 46 U.S.C. § 1300 et seq.[1]

While the Hercules–Detco towing agreement specifically referred to voyages for Escambia, the Escambia–Hercules charter did not mention Detco or its tug, the TRACY D. There was no direct contractual relationship between Escambia and Detco.

On or about June 9–11, 1975, the HERWOOD was loaded in Brunswick with some 4,350 poles. Under the charter party agreement Escambia was responsible for loading, but Stevens Shipping and Terminal Compa-

---

1. The limitations provision reads in full:

Unless notice of loss or damage and the general nature thereof be given in writing to TOWER or its agent at the port or place of destination within three days after delivery of the Tow and any cargo aboard it in good order and condition. TOWER and the tug shall be discharged from all liability in respect of loss or damage claims arising hereunder unless suit or action is brought within one year after delivery of the Tow and cargo aboard it if any, or within one year after the date when the Tow and cargo aboard it, if any should have been delivered.

ny, an independent contract stevedore, was said to have been in actual charge. On June 11, the TRACY D departed for San Juan with the HERWOOD in tow. After a call on Puerto Plata in the Dominican Republic to take on fuel, the HERWOOD capsized at sea, resulting in damage to her hull and the loss of her cargo.

On May 11, 1977, Hercules filed a complaint against Escambia, Detco, the TRACY D, and Stevens, seeking compensation for damage to the HERWOOD. Hercules alleged that improper loading had caused the HERWOOD to capsize, and that the defendants were jointly and severally liable.

On August 15, 1977, Escambia cross–claimed against Detco, the TRACY D, and Stevens, seeking indemnity in the event that Hercules was found entitled to recover against it. The claim alleged that any liability for damage to the hull of the HERWOOD arose from either negligence on the part of the cross–defendants, or breach of an implied warranty of workmanlike service arising from the towage contract.[2] In this pleading, Escambia claimed to be a third–party beneficiary of the towing contract between Hercules and Detco.[3]

Aetna, Escambia's insurer, paid a claim for the total loss of the cargo, and filed a petition to intervene as Escambia's subro-gee, charging that the cargo damage was caused by the negligence of Detco and Stevens, and their failure to perform in accordance with the implied warranty of workmanlike performance.[4]

Detco and Stevens moved to dismiss the intervention. In a memorandum in opposition to the motion to dismiss, Aetna stated with regard to the Hercules–Detco contract that "Escambia was entitled to receive the benefits of the tower's undertaking as a third–party beneficiary." In a supplemental memorandum, Aetna stated that the ". . . amendment [to the Hercules–Detco agreement] can only mean that Escambia is the beneficiary to the contract of towage."

## DISPOSITION BELOW

The district court granted summary judgment for Detco on the original complaint against it by Hercules, an action which is not complained of on this appeal. The court further rendered summary judgment for Detco on Escambia's cross–claim. Both judgments were based solely on the ground that suit had not been filed within one year of delivery of the HERWOOD, as required by the towage contract between Hercules

---

**2.** The specific allegations were as follows:

COUNT 1

15. If the plaintiff, Hercules, Inc., is entitled to recover against the defendant and cross- claimant herein by reason of matters alleged in its complaint, which is denied, it is because of the fault, negligence, and/or breach of warranty duty to perform with workmanlike service of Stevens Shipping, Detco Towing, and O/S TRACY D, their agents, servants and employees as aforesaid, among others which will be brought out at the trial of this case . . .

COUNT 2

17. In the alternative, if the plaintiff is entitled to recover against defendant Escambia Treating, which is specifically denied, cross–claimant alleges that any negligence on its part was only passive, if it existed at all, and that the damage to plaintiff's barge was caused by the active negligence of plaintiff and defendants Stevens Shipping, Detco Towing, and O/S TRACY D.

**3.** Escambia claimed third–party beneficiary status in the following manner:

7. Thereafter, pursuant to the agreement between HERCULES, INC. and ESCAMBIA TREATING, plaintiff arranged with DETCO TOWING to provide the O/S TRACY D to provide the towing services, and ESCAMBIA TREATING was a third–party beneficiary of the agreement with said independent contractors who had the duty to provide the said vessel and crew needed for the purpose of carrying out the towing of said barge.

**4.** It is clear that Aetna stated claims both for negligent towage and breach of the named implied warranty:

17.

Cargo loss referred to herein was caused by the failure of Detco and Stevens to perform their contractual duties in a workmanlike fashion, and by the fault, neglect, and lack of due care on the part of Detco Towing, Inc. and Stevens Shipping and Terminal Company, Inc. and their employees in the following respects, which will be brought out at the trial of the case . . .

and Detco. Escambia was held subject to the limitations provision as a third–party beneficiary of the agreement. Detco's motion to dismiss the Aetna intervention was granted on the same grounds, Aetna being found to stand in Escambia's shoes as its subrogee. Stevens' motion to dismiss Aetna was denied.

## CONTENTIONS ON APPEAL

Escambia appeals from the judgment against its cross–claim, and Aetna from the dismissal of its intervention as against Detco. Escambia alleges that the district court erred in finding that it was a third–party beneficiary of the written contract between Detco and Hercules, and thus subject to the fatal one–year limitation period contained therein.

In support of this position, Escambia urges first that third–party beneficiary status was not claimed under the written contract, but under an "implied warranty of workmanlike performance" arising "in all towing agreements." If it be held to the terms of the contract nonetheless, Escambia argues that, as a matter of law, "a claim for indemnity does not accrue until payment of the primary liability is made," and that "a claim cannot be time–barred before it accrues."

Detco, in rebuttal, rejects Escambia's contention that the indemnity cross–action was based on an implied warranty safely apart from the contract: without the existence of some agreement to tow, there would be no agreement from which to imply the warranty." Detco further argues that the dismiss-

al was mandated by the rationale of *Grace Lines v. Central Steamship Corp.*, 416 F.2d 977 (5th Cir. 1969), *cert. denied* 398 U.S. 939, 90 S.Ct. 1843, 26 L.Ed.2d 271 (1970).

Aetna contends that the trial court erred by casting it in exactly the same position as its subrogor Escambia, noting that its cargo damage claim against Detco was based in part on negligent towage, as well as breach of the implied warranty of workmanlike performance. As negligent towage sounds in tort rather than in contract, it is argued that the general maritime law limitation of laches should govern the claim regardless of Escambia's status as third–party beneficiary to the towage contract. Aetna goes on to dispute any assertion that Escambia was a third–party beneficiary of that agreement. Detco responds by the same arguments made in rebuttal to Escambia.[5]

## ESCAMBIA AS THIRD–PARTY BENEFICIARY

We hold that Escambia was indeed an intended beneficiary of the towage contract between Hercules and Detco, being thus bound by the limitations clause contained therein. Under Georgia law[6] the beneficiary of a contract made between parties for his or her benefit may maintain an action against the promisor on the contract. Ga.Code Ann. § 3–108. So long as a valid consideration supports the promise, the beneficiary can be a stranger to the consideration and still maintain an action on the contract. Ga.Code Ann. § 20–306. The Supreme Court of Georgia has added a

---

**5.** It should be noted that the district court entered two successive orders of dismissal of the Aetna intervention. In the first, it held that the benefits of a provision in the Hercules–Escambia charter which incorporated the one–year limitations provision of [COGSA] were extended to Detco. Aetna then argued that Detco had the legal status of a tower, and that a provision extending COGSA to Detco would be invalid under the rule of *Bisso v. Inland Waterways Corp.*, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955). The district court substituted a judgement basing its dismissal on the Hercules–Detco contract as described above.

Detco urges that the district court be upheld on both grounds. While an appellee is free to

support the decision of a lower court with arguments specifically repudiated by that court, *City of Safety Harbor v. Birchfield*, 529 F.2d 1251, 1254, n. 4 (5th Cir. 1976), we decline to pass on the reason first advanced by the district court where it was later rejected and where we find the substituted ground to be correct.

**6.** In questions involving contract interpretations, admiralty conflicts law recognizes that the law of the place where the contract was made governs. *S.C. Loveland, Inc. v. East West Towing, Inc.*, 608 F.2d 160, 164 (5th Cir. 1979). The contract in this case was made in Georgia.

gloss to § 3–108 requiring that the third–party beneficiary be an intended beneficiary:

> In order for a third–party to have a standing to enforce a contract under Code Ann. § 3–108, it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient.

*Backus v. Chilivis*, 236 Ga. 500, 224 S.E.2d 370, 372 (1976); *see also Stewart v. Gainsville Glass Co., Inc.*, 131 Ga.App. 747, 206 S.E.2d 857, aff'd 233 Ga. 578, 212 S.E.2d 377 (1974); *American Fletcher Mortg. v. First Am. Inv.*, 463 F.Supp. 186 (N.D.Ga. 1978).

While it is generally true that any shipper of cargo would directly benefit from performance of the towage contract, Escambia's status does not rest upon generalities alone. After Escambia and Hercules agreed on the chartering of Hercules' barge, the towage contract between Hercules and Detco was amended by adding the following passage:

> Provided, however, that all trips on behalf of Escambia Treating Company of cargoes consisting of telephone poles between San Juan, Puerto Rico, and Brunswick, Georgia, or other points or places as may be agreed by the parties in writing, shall be at a daily rate of $2,200 instead of $2,400 as above stipulated. In all other respects, the agreement, except as specifically amended, remains in full force and effect.

This clause shows that the parties contemplated Escambia as an intended beneficiary of the contract. Indeed, Escambia asserted this status for itself in its pleadings, as we have noted above.

█ As a third–party beneficiary, Escambia's rights spring from the contract. *Shockley v. Sallows*, 615 F.2d 233 (5th Cir. 1980). Of course, any defenses that could have been raised against a claim by a party to the contract would be good as against a third–party beneficiary. *U.S. v. Ind. Crane & Mfg. Co.*, 492 F.2d 772 (5th Cir. 1974); Restatement (2d) Contracts § 140(b) (tentative draft no. 3, 1967). Thus Escambia, as a third–party beneficiary of the Hercules–Detco towage contract, is bound by the one–year limitations provision in that contract. Aetna, whose claim arises solely as subrogee for Escambia, has no greater right than its subrogor. *National Sur. Corp. v. Western Fire & Indemn. Co.*, 318 F.2d 379 (5th Cir. 1963).

We must reject Escambia's argument that it was not a third–party beneficiary of the written contract, but rather a beneficiary of the implied warranty or workmanlike performance alone. Neither Aetna nor Escambia is able to cite any authority in support of their argument that one can be a third–party beneficiary of an implied warranty without also being subject to the underlying contract. While this specific issue has apparently never been ruled on before, it is clear that the WWLP has its origin in contract rather than in tort, and is akin to a manufacturer's warranty of the soundness of its product. *Ryan Stevedoring Co. v. Pan–Atlantic S.S. Corp.*, 350 U.S. 124, 134, 76 S.Ct. 232, 237, 100 L.Ed. 133, 142 (1956); *Crumady v. Joachim Hendrik Fisser*, 358 U.S. 423, 428, 79 S.Ct. 445, 448, 3 L.Ed.2d 413, 417 (1959); *LeBlanc v. Two–R Drilling Co.*, 527 F.2d 1316, 1319 (5th Cir. 1976); *Brock v. Coral Drilling Co.*, 477 F.2d 211, 215 (5th Cir. 1973). In fact, the WWLP has been described as "the contractual obligation to perform duties under a contract with reasonable safety." *Garner v. Cities Service Tankers Corp.*, 456 F.2d 476, 481 (5th Cir. 1972).

█ The cases that are cited by Escambia stand for the unremarkable proposition that third–party beneficiaries not in privity under the written contract may still recover under the WWLP. *See LeBlanc, supra; Brock, supra; Whisenant v. Brewster–Bartle Offshore Co.*, 446 F.2d 394, 401 (5th Cir. 1971); *see also Crumady, supra*. In short, the WWLP arises from the written contract of towage and Escambia is able to invoke the warranty only because of its status as third–party beneficiary of that contract. If its action on the contract is barred, then its action on the contractual warranty should likewise be barred.

Aetna's argument that its negligent towage action is *ex delicto* rather than *ex contractu,* so as to avoid the limitations problem, is more easily dealt with.[7] Aetna notes that a tower owes a duty to exercise such reasonable care and maritime skill as prudent navigators use in the performance of similar services, *Hart v. Blakemore,* 410 F.2d 218, 221 (5th Cir. 1969), and that cargo interests are entitled to maintain an action for breach of this duty. *Fairmont Shipping Co. v. Chevron International Oil Co., Inc.,* 511 F.2d 1252, 1259, 1260 (2nd Cir. 1975). Generally, obligations of the tower for breach of the duty are governed by tort, and not contract principles. *The John G. Stevens,* 170 U.S. 113, 18 S.Ct. 544, 42 L.Ed. 969 (1898). Thus, the timeliness of a claim for negligent towage is usually governed by the maritime doctrine of laches. *McConville v. Florida Towing Corp.,* 321 F.2d 162, 166–167 (5th Cir. 1963).

In the ordinary case, these principles are doubtless correct. The distinguishing factor here is found in the wording of the limitations clause: "TOWER and the tug shall be discharged from *all* liability in respect of *loss or damage claims arising hereunder* unless suit or action is brought within one year after delivery of the tug or cargo . . . ." [Emphasis added]. This language is obviously broad enough to cover negligence claims as well as any flowing from breach of an express or implied warranty in the contract. The contract simply contains a contractual limitation period applicable to all loss or damage claims. We have held Escambia, the cargo owner, to be bound as a third party beneficiary to this term and Aetna, having the right to sue only as Escambia's subrogee, is equally bound.[8]

## THE ESCAMBIA INDEMNITY CLAIM

We are left with the task of resolving Escambia's invocation of the general rule

that "a cause of action for indemnity will not accrue until payment of the primary liability has been made," and Detco's response that the holding of this court in *Grace Lines v. Central Steamship Corp., supra,* has created a pertinent exception. The tension between the general principle and the *Grace Lines* decision has created no little difficulty for courts which are bound by both and thus charged with the duty of achieving some reconciliation.

The recent decision of this court in *ITT Rayonier v. Southeastern Maritime Co.,* 620 F.2d 512 (5th Cir. 1980), sheds some illumination upon the problem. The *Rayonier* panel observed, 620 F.2d at 514:

The well–established general rule with respect to third–party indemnity and contribution claims is:

If a defendant has a claim over against a third–party defendant–such as a claim for indemnity, contribution, etc.– The statute usually will not commence to run against the defendant (third–party plaintiff) and in favor of the third–party defendant until judgement has been entered against the defendant, or the defendant has paid the judgement.

3 Moore's Federal Practice ¶ 14.09 at 14–247 (2d ed. 1979). *Accord, United States Lines, Inc. v. United States,* 470 F.2d 487 (5th Cir. 1972); *United States v. Farr & Co.,* 342 F.2d 383 (2nd Cir. 1965); *States Steamship Co. v. American Smelting and Refining Co.,* 339 F.2d 66 (9th Cir. 1964) cert. denied 380 U.S. 964, 85 S.Ct. 1109, 14 L.Ed.2d 155 (1965). *Chicago, Rock Island & Pacific Railway v. United States,* 220 F.2d 939 (7th Cir. 1955).

*Grace,* involving a contract governed by the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1300 *et seq.,* limited the operation of this principle. In *Grace,* a shipowner and charterer entered into a charter party

---

7. As we have noted in reciting the facts, both Escambia and Aetna made claims for negligence in towing and for breach of the WWLP. On appeal, only Aetna has made the argument that the tort action should not be governed by the contractual limitation period.

8. It may seem unfair to impose the provision upon the subrogee of a third–party beneficiary, and one who may have had no original knowledge of the term. It should be considered, however, that Aetna, in its response to the motions to dismiss, claimed third–party beneficiary status on the part of Escambia.

agreement which incorporated the one–year limitation period found at § 1303(6) of COGSA, and the charterer issued a bill of lading also made subject to that provision. The cargo was damaged, and, upon discovering this, the cargo owner brought suit against the shipowner, the ship, and the charterer. The charterer filed a third–party indemnity action against the shipowner, but not until the expiration of the one–year period. The *Grace* court held, in the words of the *Rayonier* panel, "that since the right to indemnity arose from the charter, and because the charter was subject to COGSA, the one–year statute of limitations operated to bar the charterer's claim." 620 F.2d at 514.

The *Grace* decision has sailed heavy seas of criticism since its announcement. *See, e. g., Federal Commerce & Navigation Co., Ltd. v. Calumet Harbor Terminals, Inc.*, 542 F.2d 437 (7th Cir. 1976); *Prudential Lines, Inc. v. General Tire International*, 440 F.Supp. 556 (S.D.N.Y. 1977); *Francosteel Corporation v. S.S. Tien Cheung*, 375 F.Supp. 794 (S.D.N.Y. 1973); *Mitsui & Co (U.S.A.) v. Toko Kaiun Kabushiki Kaisha*, 342 F.Supp. 14 (S.D.Tex. 1972); *Toyomenka, Inc. v. Toko Kaiun Kabushiki Kaisha*, 342 F.Supp. 292 (S.D.Tex. 1972); *Marubeni–Iida (America) Inc. v. Toko Kaiun Kabushiki Kaisha*, 327 F.Supp. 519 (S.D.Tex. 1971).[9] It was factually distinguished in *ITT Rayonier*, where the general rule with respect to third–party claims was applied.

That case involved a contract between a cargo owner and a ship owner, which incorporated the one–year COGSA limitation, and a contract between the shipowner and a stevedore, which contained no such provision. More than a year after damaged cargo was delivered at Rotterdam, the cargo owner sued the stevedore, but not the shipowner. Ten days later, the stevedore filed a third–party action for indemnity and contribution against the shipowner.

The district court granted the shipowner's motion for summary judgment, relying on *Grace* to find the stevedore's third–party action governed by the COGSA period and thus time–barred. This court reversed, noting that the stevedore's contract with the shipper "contained no COGSA provisions and [that] the stevedore was not a party to the contract between [the cargo owner] and [the shipowner]." 620 F.2d at 514. *Grace* was distinguished by an observation that the third–party plaintiff and defendant there were parties to a charter incorporating the COGSA language. Recognizing that *Grace* "is the law of the Circuit and we would have to follow it [if applicable]," the court ruled that its "application where the rights and liabilities of the parties are not based on COGSA cannot be justified." 620 F.2d at 514–15.

While *Rayonier* was not yet decided when this case was briefed and argued, the parties hereto have recognized the turning point of the *Rayonier* distinction. Escambia stated in its reply brief that "a critical point in the *Grace Lines* decision is that both parties have liability based on the same contractual or statutory duties, in that case COGSA." Detco noted the criticism of *Grace*, but asserted that "it is still good law where the injured party could have sued both indemnitor and indemnitee, but only sued indemnitee within the prescribed limitation time . . . and where the contractor incorporating the limitation applies between indemnitor and indemnitee," citing one of the critical opinions, *Francosteel Corp. v. S.S. Tien Cheung, supra.*

■ When the facts before us are viewed against this backdrop, it becomes obvious that *Grace* and not *Rayonier* is applicable. We deal with a claim for hull damage brought by the barge owner against all others involved in the incident, and more

---

**9.** Most of the criticism of *Grace* has been on policy grounds, and has specifically concerned fears that the rationale might allow a claimant to skillfully manipulate limitations periods so as to impose ultimate liability on a particular tortfeasor, regardless of where the true burden of blame should fall.

Judge Tate, specially concurring in *Rayonier*, wrote that "[A]s between potential defendants,

an opportunity to hold liable the party primarily responsible should not be foreclosed by plaintiff–choice." 620 F.2d at 515. He contended that the COGSA one-year limitation period should not be applied to any indemnity claim founded solely on subrogation, while noting that "contrary policy reasons are not without weight." *Id.*

particularly with an indemnity cross–action by the cargo owner against the tower. The barge owner could have sued both indemnitor and indemnitee within the prescribed period, but only sued the indemnitee in such a manner. Further, we have held the charter containing the COGSA limitation language entered by the tower and barge owner to be fully applicable to the cargo owner as a third–party beneficiary. Thus, the limitation period is applicable as between the indemnitor and indemnitee.

We accordingly hold the district court to have been justified in refusing to apply the general indemnity rule, and in holding the cross–action time–barred under the *Grace* rationale. An extension of *Grace* beyond its facts could indeed result in skillful manipulation of a limitation period by a claimant so as to favor one possible tortfeasor over another, however there is no indication of such manipulation here, and the result is not unjust. Escambia claimed the benefits of the towage contract containing the provision, and will not be allowed to ignore those provisions which are harmful to its cause.

AFFIRMED.

## ON REHEARING AND REHEARING EN BANC

Before COLEMAN, Chief Judge, BROWN, AINSWORTH, GODBOLD, CHARLES CLARK, RONEY, GEE, TJO-FLAT, HILL, FAY, RUBIN, VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., GARZA, HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RANDALL, TATE, SAM D. JOHNSON, THOMAS A. CLARK and WILLIAMS, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the causes shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.